**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NICOLE DIODATI<br>134 Plymouth Road, Unit 3111<br>Plymouth Meeting, PA 19462 | :<br>:<br>: |
| | :     CIVIL ACTION |
| Plaintiff, | : |
| v. | :     No.: |
| | : |
| SHK MANAGEMENT, INC. *d/b/a* | : |
| KORMAN COMMUNITIES, INC. | : |
| 580 West Germantown Pike, Suite 200 | :     **JURY TRIAL DEMANDED** |
| Plymouth Meeting, PA 19462 | : |
| | : |
| Defendant. | : |

## CIVIL ACTION COMPLAINT

Plaintiff, Nicole Diodati (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by SHK Management, Inc. *d/b/a* Korman Communities, Inc. (*hereinafter* referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA")[1]. Plaintiff was unlawfully terminated by Defendant, and she suffered damages more fully described/sought herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said Charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. SHK Management, Inc. *d/b/a* Korman Communities, Inc. is a multi-dimensional real estate company with development, management, legal and financial capabilities operating

throughout the United States, with over 20 properties under two brands – AVE suburban garden-style and mid-rise communities, and AKA urban high-rises in prime locations. Plaintiff worked at SHK Management, Inc.'s facility located at the address set forth in the above-caption.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Defendant is a real estate company whose portfolio is comprised of several properties under two brands – AVE suburban garden-style, mid-rise communities and AKA urban high rises in prime locations.

12. Plaintiff was employed by Defendant as a Human Resource ("HR") Manager from in or about November of 2014 until her unlawful termination (as discussed *infra*) on or about October 31, 2018. Plaintiff worked primarily under Defendant's AKA brand.

13. Plaintiff was initially supervised by Senior Vice President, Kathleen Ragg (*hereinafter* "Ragg"); however, she started reporting to Respondent's CEO Brad Korman (*hereinafter* "Korman") in or about January of 2018. Plaintiff was also generally supervised by Defendant's COO of Korman Communities, Inc. and Brand President of AVE, Lea Ann Welsh (*hereinafter* "Welsh").

14. During her employment with Defendant, Plaintiff was a hard-working employee who her performed her job well.

3

15. At all relevant times during Plaintiff's employment with Defendant, Plaintiff suffered from several disabilities, including but not limited to anxiety and depression (and other complications).

16. As a result of her aforesaid health conditions, Plaintiff experiences panic attacks, fearfulness, sleeplessness, and feelings of hopelessness, which (at times) limits her ability to perform some daily life activities, including but not limited to sleeping, focusing, and working (among other daily life activities).

17. Despite her aforementioned health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations while employed with Defendant (as discussed in more detail *infra*).

18. Ragg was aware of Plaintiff's aforesaid health conditions and need for accommodations early on in Plaintiff's employment with Defendant, as Plaintiff initially informed Ragg that she needed intermittent time off for psychiatrist and psychologist appointments.

19. In or about February of 2018, Plaintiff reached out to Defendant's real estate attorney (who had previously handled HR matters for Defendant before Plaintiff was hired), Rob Grossman (*hereinafter* "Grossman"), informed him of her aforesaid health conditions, and discussed her need for leave under the Family and Medical Leave Act ("FMLA") in the near future to care for and treat her serious health conditions.

20. Upon Plaintiff's information and belief, after her aforesaid conversation with Grossman (*see* Paragraph 19), Grossman conveyed Plaintiff's need for medical leave to Korman and Welsh.

21. Shortly after health discussion, FMLA needs being expressed, and notice of Plaintiff's accommodation requests in the imminent future, Plaintiff was subjected to animosity

and hostility by Defendant's management based on her disabilities. By way of example, but not intended to be an exhaustive list:

a. Welsh and Korman overly criticized and scrutinized Plaintiff's work;

b. Whenever Plaintiff would inquire if Welsh needed assistance with the AVE brand, Welsh would say "no," but would then complain to Korman that Plaintiff never provided her with assistance;

c. Welsh treated Plaintiff in a rude and demeaning manner, regularly talked down to her, and routinely ignored or talked over Plaintiff whenever she asked questions;

d. On one occasion, Welsh entered Plaintiff's office to discuss something with her, stating something along the lines of "I know that you can't even mentally handle this" (upon Plaintiff's information and belief, a clear reference to her mental disabilities);

e. Korman, Welsh, and Grossman consistently avoided meeting with Plaintiff and regularly ignored her;

f. Welsh would enter the account/HR/payroll side of Defendant's office and typically cheerfully say "hi" to all employees, but pointedly ignored Plaintiff;

g. Welsh undermined Plaintiff at meetings with brokers, often stating that Plaintiff "didn't know what she was doing"; and

h. Defendant's management began to give Plaintiff substantially more duties than other payroll/HR employees and when she informed Defendant that the payroll and HR departments were understaffed, she was initially informed by Ragg that there was no money in the budget to hire anyone for the next 4-5 years.

Defendant's management eventually hired two new employees for the HR department, Megan Bare (*hereinafter* "Bare") and Benefits Administrator, Whitney Gelrod (*hereinafter* "Gelrod"), without consulting with or informing Plaintiff – despite that fact that she managed the HR Department.

22. As a result of the aforesaid instances of discriminatory and disparate treatment that Plaintiff was subjected to by Defendant's management because of her disabilities, Plaintiff complained to Korman, Grossman, and Ragg on several occasions that she believed the negative treatment she was receiving from Welsh and others was because of her disabilities and/or discussions regarding future accommodations; however, Defendant's management ignored her concerns.

23. Instead of meaningfully investigating or addressing Plaintiff's aforesaid complaints of disability discrimination and retaliation, Defendant's management continued to subject Plaintiff to hostility and animosity through derogatory comments and disparate treatment. For example, but not intended to be an exhaustive list:

    a. Welsh increasingly scrutinized and criticized Plaintiff's work;

    b. Plaintiff was advised by Ragg, "you need to let this go, you need to not be so emotional"; and

    c. In or about August of 2018, Plaintiff discovered a job posting for her position on LinkedIn.

24. Plaintiff's aforesaid health conditions were exacerbated by the hostile work environment that she was being subjected to by Defendant's management. As a result, Plaintiff's health conditions continued to worsen and required additional medical treatment and intermittent time off for doctors' appointments.

25.     For example, in or about September of 2018, Plaintiff reached back out to Grossman and informed him that her doctors had recommended that she take intermittent and/or block leave to care for and treat her serious health conditions. Grossman informed Plaintiff that "we just need the FMLA paperwork."

26.     Thereafter, Plaintiff's doctor completed her FMLA paperwork, which was provided to Defendant's management on or about October 8, 2018. She was eventually approved for 12 weeks of FMLA on or about October 25, 2018.

27.     However, shortly following the submission of her FMLA paperwork, Plaintiff was in a training session with Bare in Delaware. During this session, Bare suddenly and sarcastically exclaimed "you have got to be kidding me" under her breath. When Plaintiff looked to see what Bare was referencing, Plaintiff discovered that texts from Gelrod displaying Plaintiff's FMLA paperwork were clearly visible on Bare's phone screen. Upon Plaintiff's information and belief, Bare was exhibiting hostility and animosity toward Plaintiff on account of her disabilities and/or her requests for medical leave.

28.     On or about October 31, 2018, shortly after requesting/utilizing reasonable accommodations and in close proximity to her complaints of disability discrimination and retaliation, Plaintiff was abruptly terminated by Korman and Grossman, who advised Plaintiff that "things just aren't working out," and "it would be the best for both of us [Defendant and Plaintiff]" to let you go.

29.     Following her termination, Plaintiff was offered unsolicited severance pay if she agreed to waive all legal claims against Defendant, including those for disability discrimination and retaliation.[2]

---

[2] *See e.g., Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any FMLA claims, even though not a

30. Plaintiff did not sign the aforesaid severance agreement.

31. Following her termination, Defendant claimed for the first time in its Position Statement to the EEOC that Plaintiff was terminated for alleged poor performance.[3]

32. Plaintiff had no progressive history of significant discipline or performance concerns while working for Defendant.

33. Plaintiff therefore believes and avers that she has been subjected to a hostile work environment due to (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) her expressed concerns of unfair treatment as a result of her disabilities.

34. Plaintiff also believes and therefore avers that she was actually terminated from her employment with Defendant for (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); (4) her expressed concerns of unfair treatment as a result of her disabilities; and (5) Defendant's failure to accommodate her.

---

company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

[3] *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir. 1990) (shift in reason for termination is evidence of pretext where employer's proffered reasons for termination at time of termination and during litigation are inconsistent).

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to, sleeping, focusing, and working (among other daily life activities).

37. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

38. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

39. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent and/or block leave for doctors' appointments and to care for and treat her health conditions.

40. Plaintiff complained to Defendant's management on several occasions that she believed the negative treatment she was receiving constituted disability discrimination and retaliation for her requests for accommodations.

41. Plaintiff was terminated from her employment with Defendant, shortly after requesting/utilizing reasonable accommodations and in close proximity to her complaints of disability discrimination and retaliation.

42. Plaintiff was terminated from Defendant in close proximity to informing Defendant's management that she needed intermittent and/or block leave for her health conditions.

9

43. Plaintiff believes and therefore avers that she was subjected to a hostile work environment because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) in retaliation for her requested accommodations through disparate treatment, demeaning and/or discriminatory treatment toward her; and (4) her expressed concerns of unfair treatment as a result of her disabilities.

44. Plaintiff also believes and therefore avers that she was terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; (4) her expressed concerns of unfair treatment as a result of her disabilities; and/or (5) Defendant's failure to properly accommodate her.

45. These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

48. Plaintiff requested leave for medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

49. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

10

50. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

51. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

52. Plaintiff was terminated in close proximity to her request for intermittent and/or block FMLA leave for doctors' appointments and to care for and treat her health conditions.

53. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

54. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

11

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 31, 2019

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Nicole Diodati

v.

SHK Management, Inc. d/b/a
Korman Communities, Inc.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　(X )

| | | |
|---|---|---|
| 10/31/2019 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  134 Plymouth Road, Unit 3111, Plymouth Meeting, PA 19462

Address of Defendant:  580 West Germantown Pike, Suite 200, Plymouth Meeting, PA 19462

Place of Accident, Incident or Transaction:  Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case  ☐ is / ☒ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  10/31/2019                    _____          ARK2484 / 91538
                                     *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE:  10/31/2019                    _____          ARK2484 / 91538
                                     *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DIODATI, NICOLE

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

SHK MANAGEMENT, INC. D/B/A KORMAN COMMUNITIES, INC.

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| 1 | U.S. Government Plaintiff | X 3   Federal Question *(U.S. Government Not a Party)* |
| 2 | U.S. Government Defendant | 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

### REAL PROPERTY
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

### CIVIL RIGHTS
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- X 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

### LABOR
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

### IMMIGRATION
- 462 Naturalization Application
- 465 Other Immigration Actions

### BANKRUPTCY
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

### SOCIAL SECURITY
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

### FEDERAL TAX SUITS
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| X 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation - Transfer | 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   'No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   10/31/2019

SIGNATURE OF ATTORNEY OF RECORD